322-0448 Joyce Haines, appellant by Robert Fink v. Ritesh Kumara, M.D., affiliate by Julie Tischer and Tabor Hills Healthcare Facility, Inc. and Bohemian Home for the Aged, affiliate by Stacy Shelley. Justice McDade, good morning. Did you want to take the lead, Justice McDade? You can go ahead and do it. All right. And everybody, Justice McDade, for technical reasons, is available and with us on Zoom. When making your arguments, obviously, you should take that into account as well and not ignore Justice McDade. All right. With that, are both sides ready to proceed? Yes, Your Honor. All right. Mr. Fink, you may go ahead. Good morning, Your Honors. Robert Fink, present on behalf of the plaintiff, Joyce Haines, in this matter. As you know, this is an appeal that is coming before this court of review based on a 304 language from the trial court, finding that there were no reasons to delay the appeal of the entry of the summary judgment relative to Dr. Carro and Tabor Hills as agencies. So, the trial court, we believe, erred in several ways. They erred in relying on Dr. Carro's 213F1 witness testimony regarding the standard of procedure. We believe that the court erred in denying the plaintiff the right to file an affidavit of an expert in opposition to summary judgment. Counsel, how much time was there between the time that the motion for summary judgment was filed and the time that an affidavit was tendered to the court in response to the motion for summary judgment? Sure, Your Honor. There was a significant period of time, but that is primarily because the defendants filed the motion for summary judgment very early in the case, hence the reason for the 191B that was filed and which was granted. And the discovery was ongoing through the time of the summary judgment, which actually brings us to the next issue, which we believe that the trial court committed error on, in that the court struck the plaintiff's 206A1 notice, which was intended as a replacement deposition for a witness who had become unavailable. And as I note in our briefs, that individual was, while not actually named in the 191B affidavit, the parties had proceeded since the time of that filing as if she had been. And in fact, the Tabor Hills had at one point informed the court exactly of that. And at another point, all parties responded in the affirmative when the trial court asked if they would be willing to agree to the deposition of the 206A1 in order to allow this to get to the briefing. So, and then in addition, the trial court, when we finally did get to that briefing, or through that briefing, and were engaged in argument on the summary judgment, improperly assumed the purview of the jury in weighing the evidence instead of just determining whether or not there was a question of fact that would remain. In the court, when they struck the 206A notice, Sua Sponte prohibited the plaintiff from completing the remaining 191B witnesses, ordered the briefs, and a hearing on the summary judgment. Despite the fact that there had not been an objection to the 191Bs, that the 206A that was stricken had actually been partially, they had partially identified a witness to testify. And we were only there on a discovery issue to determine whether or not the scope of that 206A, what the scope of that deposition was going to be. And the court, Sua Sponte, struck the entire notice and ordered the immediate briefing on the summary judgment. So, to the issue as to the court relying on 213F1 testimony, as we know, the Supreme Court rules are mandatory, strict compliance is necessary, and specifically with respect to Rule 213, every witness must be identified as an F1, an F2, or an F3 witness, either a lay independent expert or controlled witness. Rule of Evidence 701 makes it clear that an individual who is disclosed as a F1 lay witness, that testimony may not be based on scientific, technical, or other specialized knowledge, which, again, as we know, standard of care in a medical malpractice case, that is not F1 testimony. That is based on scientific, technical, and specialized knowledge. Counsel, didn't, after the deposition, didn't the doctor's counsel identify the doctor as an F3 witness? I'm glad you asked that, actually, just where I was going. That's why it's very critical that we look at the timing and the timeline of this. So, Dr. Acquara was disclosed as a 213F witness in April 20th of 2018. He was deposed as a 213F1 witness in February 6th of 2019. He filed a motion for summary judgment on March 19th of 2019. And then 25 days later, after the motion was filed and presented to the court, that is the first time that Dr. Acquara was disclosed as a 213F3. When Dr. Acquara was disclosed as a 213F3, at any time, did the plaintiff ask that he be redeposed considering the conversion? Well, we hadn't gotten through F1s, let alone all of F2s, so I wasn't going to be taking a deposition of an F3 without that testimony. And there was no order to setting an F3 schedule. And we were expecting, all the way up to the point that we were sui sponte ordered otherwise, to continue with our 191B affidavits, to which Dr. Acquara was identified as a witness, as an F3. So in that sense, yes, the plaintiff did say, in order to respond to this motion for summary judgment, we are going to need to take Dr. Acquara's deposition as a 213F3 witness. We just hadn't gotten there. Isn't it your burden to produce the expert witness? Eventually, yes. Once we get to a point, yes. And had Dr. Acquara attached an affidavit to his motion for summary judgment, which would have been competent evidence that could be considered by the court in the motion for summary judgment, I would have done so. But the plaintiff had a right to rely on our pleadings because, as you know, when a moving party fails to present admissible facts entitling it to a judgment as a matter of law, then the opposing party is able to rely upon his complaint alone in order to raise a genuine issue of material fact. And that is what we did. But, counsel, there's no time limit, and there's cases that point out that there's no time limit limiting when a motion for summary judgment may be filed. Also, there is nothing that I've seen in the Supreme Court rules that requires that everything be done in a certain order. Typically, things are done in a certain order, and when I was a trial judge, I understood that things needed to proceed in a sensible sequence. But there was nothing magical about it, and when a motion for summary judgment is pending, then you need to focus on what you really need in order to defeat the motion for summary judgment. I don't disagree with anything you just said, Justice, not a word of it. In fact, that is a good part of what our argument is, in fact, based on. And again, this goes to two things. One, as our courts have pointed out, that Section 1005B indeed does state that a defendant may move for summary judgment at any time. It does not say that the trial court must timely adjudicate that motion, regardless of pending discovery. And that's the status that this case was in. We were ongoing with discovery. We were expecting, and I was expecting, to continue to take the 191B to affidavits, or depositions, including Dr. Goro, and including the witness, the 206A1 witness, who was stricken in its entirety, despite the fact that they had already been identified as ready, willing, able, capable to proceed on a good number of topics. Let's talk about that witness. What information could that witness possibly have had that would bear on whether or not Dr. Korob reached the standard of care? Sure. So, and this is part of the framing of this issue, which I think, unfortunately, I think the trial court kind of fell into, in looking at this, of the instant in which Ms. Haynes fell at the toilet. As she attempted to lower herself, she found herself in a situation where she was attempting alone. Her walker had been removed from, moved away from her. She was trying to lower herself onto a raised toilet seat. This is a woman who was recovering from, at this facility, to specifically recover from a femur fracture in surgical, which required surgical repair. So, that's not the moment of Dr. Korob's negligence in his breach of standard of care. It goes back a little bit before that, and as we allege, that he failed to do a proper assessment, and he failed to order Ms. Haynes into the fall protection program. And one of the nurses indicated that individuals who are part of that fall protection program, they receive extra care and extra precautions to keep them safe because they are more likely to be a fall risk. That's where Dr. Korob's negligence comes in, in that, and this was the conversation that we had with the trial court, in that Dr. Korob does not have to be the sole proximate cause, he only has to be a cause. And had Dr. Korob performed a proper evaluation, fall evaluation and assessment, and placed her into the fall protection program, the testimony is that she would have then received additional care and would not have been there standing in front of a toilet, recovering from femur surgery with no walker, in a position where she would have fallen. So, is Dr. Korob the sole proximate cause? No, we don't believe that he is. We don't allege that he is. That's why Tabor Hills and other nurses are involved in this ongoing case. But that does not mean that he has no responsibility for the incident either. If I may, the question that Justice Albrecht has asked is, what is it that the corporate representative would have testified to that would have related to anything you just said? Yes. So, the corporate representative was the director of nursing. One of the nurses testified relative to the additional care that would go to individuals who were placed in the fall protection program. Now, none of these individuals had any specific recollection of Mrs. Haynes relative to that aspect. So, we're going to talk to the director of nursing as to the training and education that the nurses would be provided and that they could be expected to comply with, about the communication between the nursing staff and the admitting doctor, in this case, Dr. Korob, and similar such issues. So, it's not just, it's that interaction, and it's again, as I was saying, it's that communication from Dr. Korob to that staff of, this is an individual who needs to be on the fall protection, who needs that extra assistance, who needs that extra protection. That didn't occur, and it didn't occur because Dr. Korob didn't do a proper fall evaluation and he didn't order her into the fall protection program. He didn't, he also maintained inconsistent orders. Orders which, full weight bearing, and, but required still one person assist. Which, again, the director of nursing can address as what those, what that confusion would be expected to create for her staff, for the nursing staff. And again, that is relying on Dr., that goes back to Dr. Korob and the communication that was necessary that he failed to do, to comply with. So. Counsel? Yes. I think your time is up. Oh. You'll have an opportunity for rebuttal. Yes. Thank you. Is it Ms. Tuescher? Yes. You may proceed. Thank you. Good morning. Julie Tuescher on behalf of the defendant, Dr. Korob. I will address the summary judgment issue, and my co-defense counsel, Michele, will address the 206 issue. This was a medical negligence case against Dr. Korob. This case was filed in 2017. Dr. Korob's motion for summary judgment was filed in 2019, three and a half years before the circuit court ruled on the motion. During those three and a half years, plaintiff never produced expert testimony that would rebut Dr. Korob's opinion that he complied with the standard of care. There are two independent reasons why this court can affirm summary judgment for Dr. Korob. The first is that plaintiff offered no expert testimony to rebut his opinion that he complied with the standard of care. Plaintiff alleged that Dr. Korob improperly assessed Ms. Haynes and entered negligent orders with respect to the level of assistance that she required. Those allegations require expert testimony. Dr. Korob's motion for summary judgment was supported by his deposition testimony that he complied with the standard of care. That happens all the time in medical malpractice litigation. And when plaintiff says that the motion was unsupported by facts, that's just incorrect. Plaintiff's counsel took a three-hour deposition from Dr. Korob. He asked him all kinds of questions about his qualifications, established that he was a board-certified family practice physician, asked him about how he assessed Ms. Haynes, what orders he entered, why he entered those orders. That all occurred during Dr. Korob's deposition. The motion was also supported by the deposition of Ms. Haynes. Ms. Haynes described exactly how and why her fall occurred. So the motion for summary judgment was supported by facts. Dr. Korob entered an order for one-person assistance while she was bearing weight as tolerated. And Dr. Korob established in his deposition that that order meant that Ms. Haynes was supposed to be assisted until she was in a seated position. The nurse, whose deposition was also taken, confirmed those facts. She said, yes, when we receive an order from the doctor saying one-person assist, we understand that to mean that the patient is to be assisted until she is in an entirely seated position. That was Dr. Korob's order. The plaintiff offered no expert testimony to rebut Dr. Korob's opinion. The plaintiff says, rely on my allegations in my complaint. But this court in Lulay rejected that notion and said, once the movement puts forward facts on which you can grant summary judgment, the plaintiff can no longer rely just on allegations. The plaintiff has to come forward with evidence, and the plaintiff didn't do so here. The plaintiff then says, well, rely on my 622 report attached to my complaint. But the Illinois Supreme Court in Robodeau said that's not good enough. An unsigned, unsworn document is insufficient to create a question of fact summary judgment. And the circuit court acted well within its discretion when it refused to consider the document that plaintiff tendered at the summary judgment hearing in October of 2022, three and a half years after this motion for summary judgment was filed. To start, plaintiff has forfeited that issue in this court because plaintiff never made an offer of proof. It was an unsigned, unidentified document. The circuit court had no information as to the qualifications of the individual who allegedly provided this document, as to the opinions, or what this person would say. Without proof in the circuit court, let alone in this court, about what that document contained, plaintiff has forfeited that issue. He's offered this court no evidence of who this person was, what they were going to say, whether they were qualified to say it, and whether they had reached any conclusions. So plaintiff has forfeited the argument that the circuit court abused its discretion in rejecting that document. And I think that was subject to an abuse of discretion standard. Plaintiff argues de novo, but that wasn't a ruling where the court looked at a document and said it was deficient as a matter of law. That was the court saying, look, I entered an order saying that you had to file a response before this hearing, and you failed to do so. That's a discretionary order. That's an order that flows from the circuit court's ability to manage its own docket. Beyond that, the deadline for plaintiff's response had passed by the time he tried to submit that document at the hearing. And as the circuit court said, the circuit court's orders have to mean something. If the circuit court says you need to respond by X date and plaintiff doesn't do so, that order has to mean something. Plaintiff wants to say that non-movements can walk into the court at any hearing and try to submit documents. But precedent by this court that that's the standard, that an opponent to a motion for summary judgment can always walk into court on the date of the hearing and disregard a circuit court's order, requiring him to file a response by a date certain, would create chaos in the circuit courts involving motion practice. As you pointed out, Judge, defendants can file motions for summary judgment at any time. They are not limited to filing summary judgment motions until after a Rule 213 deadline has passed. Plaintiff has provided this court with no legal authority that says that we can't move for summary judgment supported by the deposition testimony of a defendant position before a Rule 213 disclosure deadline passes. And this was not early in this case. The summary judgment was filed two years into the case. It was pending for three and a half years. Plaintiff had five and a half years from the inception of the case to come up with an expert witness to oppose this summary judgment and didn't. Counsel, can you address the conversion of the 213 F1 witness to the 213 F3, please? Counsel wants to call Dr. Kora's testimony lay witness testimony, but that's just incorrect. I mean, it's standard practice that when a physician gives a deposition and says, I complied with the standard of care, that that can be utilized in support of a motion for summary judgment. Rule 213 G recognizes that deposition testimony can be utilized. Excuse me, that opinions given in a deposition can be considered expert opinions. And that's what happened here. Beyond that, can the plaintiffs rely upon your classification of that witness for purposes of the deposition? He can cross-examine him on it. Or elect not to based upon how you characterized witness. He can at his own peril. And then in April of 2019, Dr. Kora filed amended 213 F3 answers. And at that point, as an F3 witness said, I'm going to give the opinion that I complied with the standard of care, which was an opinion he identified in April of 2018 as well. Plaintiff never asked for a second deposition of Dr. Kora. He let that stand. He never requested further deposition from him. There was no surprise here about Dr. Kora's opinion. He told plaintiff in April of 2018 in 213 responses, I'm going to say I complied with the standard of care. At his deposition in 2019, I complied with the standard of care. In amended 213 answers, I complied with the standard of care. And he did nothing in the three years from the time Dr. Kora was identified as an F3 witness until the time of the hearing to try and rebut that opinion. The circuit court gave the plaintiff more than sufficient time to marshal evidence here. He allowed him to depose nine additional individuals after the motion was filed. Plaintiff deposed all of those people and cited none of their testimony in response to the summary judgment motion. This court can affirm on the basis that plaintiff never rebutted that opinion testimony. But the court can also affirm on the proximate cause issue. There's no question of fact about how this fall occurred. Ms. Haynes described it in her deposition in detail. She fell when she was in the bathroom, not because she lost her balance, not because she slipped, but because she was trying to turn to get onto the toilet. Dr. Kora's order said, this lady is to be assisted until she is in a seated position. His order had nothing to do with the toilet seat coming off the toilet. If his order had been followed, she would have been assisted until she was in a seated position. That eliminates proximate cause with respect to Dr. Kora. She said, I reached over, I grabbed the handle, I'm pulling to get my body to the toilet, and the whole thing flew up and made me fall. You did not slip before you grabbed the seat? No. You didn't lose your balance before you grabbed the seat? No. Dr. Kora's order that she was to be assisted to a seated position had nothing to do with why she fell. So there are two independent bases upon which this court can affirm summary judgment. And that's what Dr. Kora asks you to do. Any additional questions for Ms. Tushar? No. I have none. Thank you very much. Thank you. Ms. Shelley. Good morning, your honors. May it please the court, my name is Stacy Shelley and I represent Tabor Hills Health Care Facility and Bohemia at Home for the Aged. We relied on Dr. Kora's motion for summary judgment and obtained it as well with respect to the two counts for vicarious liability against my clients. As Ms. Tushar noted, I'll be addressing the court's decision to grant Tabor Hills motion for the protective order and to quash the plaintiff's Rule 206A1 notice with respect to the corporate representative. There are three, as I see it, primary issues that I'm dealing with, all of which militate in favor of affirmance of the trial court with respect to the summary judgment and the quashing of the Rule 206A1 notice. The first is that simply the appellate court lacks the jurisdiction to consider the protective order and the motion to quash. The second is that the trial court reasonably exercised its discretion to grant the protective order and quash the Rule 206A1 notice. And the third is, as Justice Albrecht has I think already appropriately recognized, that even assuming that the Rule 206A1 notice was quashed in error, that witness's testimony could not create a question of material fact about a physician's alleged medical negligence. I'd like to specifically, I think, focus most of my argument, the few minutes I have, with respect to the abuse of discretion. I'd like to note, as contained in the statement of facts in the briefs, that before the trial court granted the motion to quash the Rule 206A1 notice, the plaintiff actually had the right to pose that witness. He did not take it. There were questions about what might be addressed at that deposition as the, I think it was 79 topics were in that 206A1 notice. There were some objections. I believe 40 were identified as, yes, this person can speak to these. Plaintiff had that opportunity. He didn't take it prior to the trial court quashing that notice. But beyond that, for the trial court to have abused its discretion in quashing the Rule 206A1 notice and requiring the plaintiff to finally respond to the motion for summary judgment that had been pending for three and a half years, it would require this court not to simply disagree with the trial court's decision to do that, but to find that the trial court abused its discretion in doing so. And the case law talks about an abuse of discretion would require this court to find that that decision was arbitrary or capricious or that no reasonable person would ever find as the trial court did. The Rule 206A1 notice is unquestionably a discovery issue. Rule 201 gives the trial court broad latitude to supervise discovery. The subsection C, which provides for protective orders, talks about protective orders, prevention of discovery abuses, and proportionality of discovery. Given the extent to which the trial court has the authority to control discovery as well as its own docket, the facts of this case simply do not support a finding that the trial court's granted the protective order and granting the motion to quash the Rule 206A1 notice is something that no reasonable person would do. And I'll note that the plaintiff in their briefing does not cite any legal authority that found similarly in a similar situation. Beyond that, there's simply no question of material fact raised in that rule that could be raised by that Rule 206A1 notice or what that witness would testify to with respect to the issue on appeal here, which is, is there evidence that Dr. Cora deviated from the standard of care and did that deviation possibly cause the plaintiff's injury? In Wells Fargo Bank v. Coghlan, 20121 LF 3rd, this court noted that while a non-moving party need not prove his or her claim at the summary judgment stage, it is the put up or shut up moment in a suit, and the non-moving party must present some factual basis to support his or her claim. And the simple fact is, in this case, that the plaintiff did not meet her burden to put up in response to the motion for summary judgment, and the testimony of any designated 206A1 corporate representative does not and cannot ever demonstrate evidence of medical negligence by Dr. Cora that approximately caused the toilet seat to fall apart. I appreciate... You just got in on it. Ms. Shelley, thank you very much. Any questions for Ms. Shelley, Justice McDade, or Justice Albrecht? No, I don't have any. I have none. All right. Thank you, Your Honor. Thank you very much. Mr. Fink, you're bubbled. Morning again. I'm going to talk to you a little bit quicker this time. Can I ask you to start with the forfeiture question? Absolutely. So, with respect to the forfeiture, with respect to the affidavit... Right. Sure. There was no forfeiture. We attempted... I started off that hearing saying, I have an affidavit here, Your Honor. How would you like to handle this procedurally? And I proposed several options to the court. I can file it. I can give it to you for in-camera inspection. Or we can get a ruling as to the procedural aspect of whether or not this testimony from Dr. Cora is going to be taken into consideration, because there's a dispute as to whether or not they have the right to rely on that. We didn't get that. The court, despite a couple of requests, didn't address that until the very, very end when I brought it back up again. And I said, just so we have a record, Your Honor, what's the ruling on this? And the trial court just said, well, I'm denying you. You may not file that. But how do we assess whether that's an abuse of discretion without viewing the affidavit somehow or having a proffer that sets forth what's in the affidavit? Absolutely. Twofold. First of all, the affidavit was not filed because I was specifically instructed... Right, but you know how to say, well, Judge, in light of your ruling, we'd like to make an offer of proof. Sure. And second, while not as artfully as it probably should have been, it was. And it was identified as the affidavit states exactly what is in the 2622 that is attached to our complaint. So we have met that burden of providing information to allow you to identify whether or not that information would be sufficient to rebut the presumed, for purposes of this discussion here, argument that Dr. Cordova's deposition testimony was properly considered. Back to that very quickly. We just heard one of the key issues here is once Dr. Cordova meets his burden, once he presents evidence and facts, then it becomes the plaintiff's burden to present evidence. That's the issue. They didn't get past that initial step. So their entire argument that stems from that is based on a flawed position of they can take 213F1 and, Your Honor, I think you hit the nail right on the head of doesn't the plaintiff have the right to rely on that disclosure? And the response is very telling. The response is at their own risk. Well, that's not how litigation works. Litigation and discovery is not gamesmanship. When a defendant discloses a witness as an F1, the rules say that witness is an F1. However, the rules also allow and the courts have always allowed the plaintiff, the witness, to be converted from an F1 to an F3. And when a witness is converted to an F3, there was no request to redepose that factor. I mean, this was a three-and-a-half-year period of time that went by between the filing of the motion for summary judgment and the hearing. True. Now, one, we weren't just sitting around doing nothing in that time period. We were continuing with the extensive litigation, as you heard. And very, very quickly, with respect to the proximate cause, I'm sorry, let me switch to the jurisdiction issue that was raised. The court does have jurisdiction because the 206-A1 is a critical step in the granting of the summary judgment. Again, we were continuing through with discovery. We were preparing. I had an expert, as was evident at the hearing. And also, the statute, it doesn't matter what counsel believes common practice may be. The statute is that the opposite party may prior to or at the time of the hearing on the motion file counter-affidavits. And as this court is well aware, our Supreme Court and this court have repeatedly stated that in interpreting any kind of statute, a court will not read in the exceptions, limitations, or conditions that the legislator did not express. Was the affidavit that you sought to present signed and completed? It absolutely was. I thought that it was an anonymous affidavit. The affidavit attached to the complaint was. But I had in my possession that day, and I believe I made clear, or at least attempted to make clear to the trial court, that I had two copies of that affidavit with me present. An unsigned copy and a fully signed and executed affidavit. And again, that went back to the options that I was trying to offer the court in handling that divergence relative to whether or not Dr. Kaur, as a 213-F1, can be converted to an F3 after filing his motion for summary judgment and giving his deposition. Is any case law saying that that cannot happen? The funny thing here is that I looked, and counsel had made a comment of my not referencing anything. Yeah, I never. As far as I can tell, it doesn't happen. Defendants don't file a motion for summary judgment without an F3, some sort of, something. If it's early, an affidavit. Or they disclose their client, the doctor, as an F3. And that would have been an entirely different scenario than what we have here. Justice McDade, any additional questions for Mr. Pink? I do not. Justice Albrecht? None. We thank both sides for a spirited debate. We will take the matter under advisement and issue a ruling in due course. Thank you.